J-S13014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JERON GIBSON BOGGS | : | |
| | : | |
| Appellant | : | No. 2890 EDA 2022 |

Appeal from the Judgment of Sentence Entered September 1, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0008098-2018

BEFORE: NICHOLS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED AUGUST 03, 2023**

Appellant Jeron Gibson Boggs appeals *nunc pro tunc* from the judgment of sentence imposed after he pled guilty to five counts of possession with intent to deliver a controlled substance (PWID), two counts of criminal conspiracy, and one count each of corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication facility.[1] On appeal, Appellant challenges the discretionary aspects of his sentence and argues that the trial court abused its discretion when it imposed an aggregate sentence of eight to nineteen years of incarceration. After review, we affirm.

The record reflects that the Commonwealth charged Appellant in a 280-count criminal information involving the distribution of heroin and fentanyl.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30); 18 Pa.C.S. §§ 903, 911(b)(3), 5111(a)(1), and 7512(a), respectively.

*See* Criminal Information, 1/31/19.  The trial court summarized the relevant

facts and procedural history of this matter as follows:

> [O]n October 8, 2019, [Appellant] entered an open guilty plea to [five counts of PWID, two counts of criminal conspiracy (conspiracy to commit PWID and conspiracy to commit corrupt organizations), and one count each of corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication facility], admitting that from January 1, 2018 through September 26, 2018, he was associated with an enterprise engaging in selling drugs.  He was involved in the enterprise along with George King and his heroin and cocaine suppliers.  There were also others involved that were dealing drugs, heroin and fentanyl.  [Appellant] admitted that he was buying drugs from Mr. King in Philadelphia and selling those drugs in Norristown, Montgomery County.  More specifically, [Appellant] obtained about a total of 97 bundles of heroin from Mr. King over several dates, September 10, 2018, September 15, 2018, September 20, 2018, and September 21, 2018.  In addition, there were 27.98 grams of heroin, clonazepam, trazodone, and amphetamines found at his residence as a result of a search warrant, that he possessed with the intent to sell.  Further, [Appellant] recruited the aid of others to help him in his distribution. Finally, [Appellant] agreed that he took over the drug dealing business of Daymon Bell, and that Mr. Bell gave him a customer list when Mr. Bell went to prison.  The [trial c]ourt accepted [Appellant's] guilty plea. On October 21, 2019, a motion to withdraw[] guilty plea was filed, and after a hearing the motion was denied.

Trial Ct. Op., 1/17/23, at 1-2 (internal citations omitted and formatting

altered).

On September 1, 2021, the trial court imposed sentences in the

standard-range of the Sentencing Guidelines and sentenced Appellant as

follows: Count 71 (conspiracy), four to eight years of incarceration; Count 2

(corrupt organizations), two to five years of incarceration; Count 3

- 2 -

(conspiracy), two to five years of incarceration; Count 4 (dealing in proceeds of unlawful activities), one to two years of incarceration; Count 11 (PWID), two to five years of incarceration; Count 37 (PWID), two to five years of incarceration; Count 53 (PWID), two to five years of incarceration; Count 60 (PWID), two to five years of incarceration; Count 70 (PWID), two to five years of incarceration; and Count 78 (criminal use of a communication facility), one to two years of incarceration. **See** N.T. Sentencing, 9/1/21, at 41-43. The trial court ordered Appellant to serve the sentences at Counts 4, 53, 60, 70, and 78 consecutively resulting in an aggregate term of eight to nineteen years of incarceration. **See id.**

On September 13, 2021, Appellant filed a post-sentence motion. The trial court did not rule on this motion, and Appellant did not file a direct appeal.

On August 25, 2022, Appellant filed a timely Post Conviction Relief Act[2] (PCRA) petition asserting that his trial counsel was ineffective for failing to file a direct appeal and requested the reinstatement of Appellant's direct appeal rights *nunc pro tunc*. **See** PCRA Pet., 8/25/22, at 6-9. On October 25, 2022, the PCRA court granted Appellant's PCRA petition and reinstated Appellant's direct appeal rights *nunc pro tunc*. Order, 10/25/22. Appellant filed a timely notice of appeal *nunc pro tunc* on November 14, 2022, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

---

[2] 42 Pa.C.S. §§ 9541-9546.

On appeal, Appellant raises the following issues:

1. Is the sentence imposed unreasonable given that the aggregate consecutive sentences totaling eight (8) to nineteen (19) years constitute a manifest abuse of discretion[?]

2. Did the trial court err by failing to allow a post-sentence motion for reconsideration to be filed, given that the prior motion for reconsideration was determined to be filed untimely?[FN1]

> [FN1] The trial court determined in its opinion filed on January 17, 2023, that prior counsel's motion for reconsideration was untimely filed despite the Commonwealth agreeing that the motion was timely filed. However, the trial court's determination was made on the record in its opinion filed after Appellant's Concise Statement was submitted on November 26, 2022.

Appellant's Brief at 4. Because Appellant's issues are interrelated, we address them concurrently.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted). "To preserve an attack on the discretionary aspects of sentence, an

appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." ***Commonwealth v. Malovich***, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); ***see also*** Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

The trial court concluded that Appellant's September 13, 2021 post-sentence motion was untimely. ***See*** Trial Ct. Op. at 4. The trial court sentenced Appellant on September 1, 2021, and therefore Appellant had ten days in which to file a timely post-sentence motion. Pa.R.Crim.P. 720(A)(1). The tenth day fell on Saturday, September 11, 2021. As such, Monday, September 13, 2021, was the first day the courts were open following the expiration of the ten-day period. ***See*** 1 Pa.C.S. § 1908 (providing that for computations of time, if the last day of any such period shall fall on a Saturday, Sunday, or on a legal holiday, such day shall be omitted from the computation). Accordingly, we conclude that Appellant's September 13, 2021 post-sentence motion was timely.

Further, the record reflects that the trial court never ruled on Appellant's post-sentence motion, and the post-sentence motion was denied by operation of law 120 days later on January 11, 2022. ***See*** Pa.R.Crim.P. 720(B)(3)(a). However, the clerk of court did not notify Appellant that his post-sentence motion was denied by operation of a law or inform Appellant of his direct appeal rights, and this failure constitutes a breakdown in the operation of the

- 5 -

court.  *See Commonwealth v. Patterson*, 940 A.2d 493, 498 (Pa. Super. 2007) (collecting cases stating that "a court breakdown occurred in instances where the trial court, . . . either failed to advise [the a]ppellant of his post-sentence and appellate rights[,] or misadvised him."); *Commonwealth v. Perry*, 820 A.2d 734, 735 (Pa. Super. 2003) (stating "where the clerk of courts does not enter an order indicating that the post-sentence motion is denied by operation of law and notify the defendant of same, a breakdown in the court system has occurred and we will not find an appeal untimely under these circumstances." (citations omitted)); Pa.R.Crim.P. 720(B)(3)(c).

However, on August 25, 2022, Appellant filed a timely PCRA petition requesting the reinstatement of his direct appellate rights *nunc pro tunc*, the PCRA court reinstated Appellant's direct appeal rights *nunc pro tunc*, and Appellant filed a timely appeal.[3]  Accordingly, we conclude that the "breakdown was remedied by the PCRA court restoring Appellant's appeal rights." *Commonwealth v. Gabriel*, 2284 EDA 2019, 2021 WL 2289067, at

_____

[3] As stated above, in its 1925(a) opinion, the trial court concludes that Appellant's September 13, 2021 post-sentence motion was untimely and, therefore, failed to preserve any challenges to the discretionary aspects of the sentence.  As noted, we conclude that Appellant's post-sentence motion was timely and are constrained to conclude that the trial court's finding was erroneous.

- 6 -

*1 n.1 (Pa. Super. filed June 2, 2021) (unpublished mem.) (quotation marks omitted).[4]  Therefore, we proceed with our discussion.  ***See id.***[5]

The next requirement that Appellant must satisfy for this Court to reach the merits of his challenge to the discretionary aspects of a sentence is the inclusion of a Rule 2119(f) statement in the appellate brief.  ***Corley***, 31 A.3d at 296.  Here, Appellant has included a Rule 2119(f) statement in his brief.  ***See*** Appellant's Brief at 7-8.  Therefore, we next consider whether Appellant has raised a substantial question for review.  ***Corley***, 31 A.3d at 296.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis."  ***Commonwealth v. Battles***, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted).  "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process."  ***Commonwealth v. Grays***, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

"Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being

---

[4] ***See*** Pa.R.A.P. 126(b) (providing that unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

[5] Because we conclude that Appellant filed a timely post-sentence motion preserving his challenge to the discretionary aspects of his sentence, we need not address whether Appellant should have been permitted to file a post-sentence motion *nunc pro tunc*.

imposed at the same time or to sentences already imposed. Any challenge to the exercise of this discretion ordinarily does not raise a substantial question." ***Commonwealth v. Prisk***, 13 A.3d 526, 533 (Pa. Super. 2011) (citation and quotation marks omitted). This Court has also stated that "ordinarily, a claim that the sentencing court failed to consider or accord proper weight to a specific sentencing factor **does not** raise a substantial question." ***Commonwealth v. Swope***, 123 A.3d 333, 339 (Pa. Super. 2015) (citation omitted and emphasis in original).

However, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (citations omitted). Further, this Court has held that an appellant's "challenge to the imposition of his consecutive sentences as unduly excessive, together with his claim that the court failed to consider his rehabilitative needs and mitigating factors upon fashioning its sentence, presents a substantial question." ***Swope***, 123 A.3d at 340.

In his Rule 2119(f) statement, Appellant argues that the trial court failed to consider mitigating factors and Appellant's rehabilitative needs, imposed a manifestly excessive sentence because it was "overly focused on the offenses," and the court abused its discretion by imposing consecutive sentences. ***See*** Appellant's Brief at 7-8. We conclude that Appellant has raised a substantial question for our review. ***See Swope***, 123 A.3d at 340. Accordingly, we will review the merits of Appellant's underlying claim.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted). Additionally, "[w]e cannot re-weigh the sentencing factors and impose our judgment in the place of the sentencing court." *Commonwealth v. Macias*, 968 A.2d 773, 778 (Pa. Super. 2009) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered).

"[T]he trial court is required to consider the particular circumstances of the offense and the character of the defendant[,]" including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citation omitted). This Court has held that "where the sentencing judge had the benefit of a [PSI report], it will be presumed that he or she was aware of the relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory

factors." ***Id.*** (citation omitted). This Court may only disturb a standard-range sentence if we find that the circumstances of the case rendered the application of the guidelines "clearly unreasonable[.]" 42 Pa.C.S. § 9781(c)(2).

It is well settled that "Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed." ***Commonwealth v. Austin***, 66 A.3d 798, 808 (Pa. Super. 2013) (citation omitted). Further, this Court has explained that "defendants convicted of multiple offenses are not entitled to a 'volume discount' on their aggregate sentence." ***Commonwealth v. Foust***, 180 A.3d 416, 434 (Pa. Super. 2018) (citations omitted), *abrogated on other grounds by* ***Commonwealth v. Felder***, 269 A.3d 1232 (Pa. 2022).

At sentencing, the trial court stated as follows:

THE COURT: Very well. The court does have the benefit of a [PSI] report in this case which I've carefully considered. I've also carefully considered the [Probation Parole Intervention (PPI)] report and recommendation there, together with the testimony, [Appellant's] statement given today, the submission of counsel, letters on his behalf, and the Sentencing Code and the Sentencing Guidelines. We've gone over the Sentencing Guidelines previously.

I have considered [Appellant's] upbringing . . . as set forth in great detail in the [PSI report] which also sets forth things such as his work history, his criminal history, and other information which I've carefully considered.

It's certainly to [Appellant's] credit that he has the support of family and friends who are here today or wrote letters on his behalf. I've considered those things also.

The situation the court is dealing with is a defendant who was engaged in ongoing distribution of heroin bought from Mr. King for resale to some 20 customers as he identified in his guilty plea. This is very serious, dangerous, criminal activity. We're dealing with, for sentencing purposes, 30 bundles, 12.6 grams, on September 10th; another 30 bundles, 12.6 grams, on September 15th; 17 bundles, 7.14 grams, on September 20th; 20 bundles, 8.4 grams on September 21; and the search warrant found 27.98 grams of heroin, 40 bundles, and other drugs.

This is dangerous, serious criminal activity. In my view, it does merit consecutive sentences and does not merit a mitigated sentence. I certainly feel that a lesser sentence than one that I impose would depreciate the length and breadth of his criminal activity.

The fact is also he has been involved in criminal activity before and did not learn from it. The adjudication of robbery is distant in time, but he was committed to Glen Mills and he was adjudicated again a year later or so on a drug act violation. And then as an adult, he had the possession of controlled substance and then driving under the influence.

It's not as though [Appellant] just made a mistake. He knowingly and intentionally engaged in serious criminal conduct day after day, very dangerous criminal activity over and over again. He is an intelligent person. He knew what he was doing. There really is no excuse for his conduct. The impact of this kind of criminal activity on society is very, very negative. People do get addicted. There's the risk of death involved with this kind of thing.

[Appellant's] own problems with substance abuse is set forth in the PPI evaluation and they find a severe opioid use disorder, mentioning fentanyl, heroin, and Percocet, and they find it's in remission when he's in a controlled environment, and I believe that's his history. If he's on the street, he's probably using drugs. That's criminal activity in and of itself. So there is a risk of him committing new crimes when not incarcerated due in part to that.

The sentence that I impose is consistent with the protection of the public, the gravity of the offense, the numerous crimes here, and the negative impact of his crimes on our community. I believe he is in need of treatment that can be best provided by his commitment to state prison. The sentence that I impose is appropriate given his character and attitude.

- 11 -

N.T. Sentencing, 9/1/21, at 38-41 (some formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. Appellant pled guilty to ten separate criminal counts, and as noted previously, he was not entitled to a volume discount on his crimes. *See Foust*, 180 A.3d at 434. Indeed, due to the number of criminal charges to which Appellant entered an open guilty plea, Appellant was facing a possible statutory maximum aggregate sentence of 75 to 150 years of incarceration. *See* N.T. Sentencing, 9/1/21, at 6-7. The record reflects that the trial court considered the PSI report, the relevant sentencing factors, and the mitigating evidence presented at the sentencing hearing. *See Ventura*, 975 A.2d at 1135. Ultimately, the trial court carefully considered the applicable sentencing factors, imposed sentences in the standard range of the guidelines, concluded that it was appropriate under the circumstances to direct Appellant to serve some of the sentences consecutively, and imposed an aggregate sentence of eight to nineteen years of incarceration. *See* N.T. Sentencing, 9/1/21, at 38-41. On this record, we have no basis upon which to conclude that the sentence was excessive, that the trial court focused on the nature of the crimes, or that the trial court abused its discretion in structuring part of Appellant's sentences consecutively. *See* 42 Pa.C.S. § 9781(c)(2); *Foust*, 180 A.3d at 434; *Austin*, 66 A.3d at 808. Therefore, Appellant is not entitled to relief on his challenge to the discretionary aspects of his sentence.

Finally, although Appellant did not include the issue in his Rule 1925(b) statement or in his statement of questions presented, Appellant mentions, albeit briefly, that "the doctrine of merger" applies to his sentence. **See** Appellant's Brief at 9, 14. However, Appellant fails to state which crimes should have merged for purposes of sentencing. Nevertheless, merger presents a non-waivable challenge to the legality of the sentence imposed, for which this Court exercises plenary *de novo* review. **See Commonwealth v. Watson**, 228 A.3d 928, 941 (Pa. Super. 2020). Accordingly, we will address whether Appellant's crimes should have merged for purposes of sentencing. **See id.**

Although the trial court did not address this issue, the Commonwealth responded that Appellant failed to acknowledge the statute regarding merger of sentences that became effective February 7, 2003, 42 Pa.C.S. § 9765, Act 215 of 2002 of the Sentencing Code,[6] that superseded the appellate decisions that Appellant relies on in his argument. In support, the Commonwealth cites our Supreme Court's application of the statute which observed:

> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single

---

[6] Section 9765 provides as follows:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765.

criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

**Commonwealth v. Baldwin**, 985 A.2d 830, 833 (Pa. 2008).

Further, the Commonwealth cites cases in which this Court considered and rejected the same arguments made by Appellant in the instant case and argues that Appellant's merger claim is meritless because all of the statutory elements of the offenses are not included in each other. Commonwealth's Brief at 16-18 (citing **Commonwealth v. Lynch**, 242 A.3d 339 (Pa. Super. 2020), *appeal denied*, 252 A.3d 107 (Pa. 2021); **Commonwealth v. Cianci**, 130 A.3d 780, 782 (Pa. Super. 2015)).

As noted, when reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary. **Watson**, 228 A.3d at 941. Section 9765 prohibits merger unless the crimes arise from a single criminal act and all of the statutory elements of one of the offenses are included in the statutory elements of the other. **Baldwin**, 985 A.2d at 833; 42 Pa.C.S. § 9765. When the offenses stem from separate criminal acts, merger does not apply. **See Commonwealth v. Williams**, 958 A.2d 522, 527 (Pa. Super. 2008).

As set forth above, Appellant pled guilty to five counts of PWID, two counts of criminal conspiracy, and one count each of corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication facility. These crimes are defined, in relevant part, as follows:

PWID:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

Conspiracy:

(a) Definition of conspiracy.—A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

(1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or

(2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S § 903(a) (formatting altered).

Corrupt organizations:

(b) Prohibited activities.—

* * *

(3) It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 Pa.C.S § 911(b)(3) (formatting altered).

Dealing in proceeds of unlawful activities:

(a) Offense defined.—A person commits a felony of the first degree if the person conducts a financial transaction under any of the following circumstances:

(1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity.

18 Pa.C.S § 5111(a)(1) (formatting altered).

Criminal use of a communications facility

(a) Offense defined.—A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act. Every instance where the communication facility is utilized constitutes a separate offense under this section.

18 Pa.C.S § 7512(a) (formatting altered and footnote omitted).

The record reflects that Appellant pled guilty to engaging in a criminal enterprise of drug purchases and distribution from January 1, 2018, through approximately September 26, 2018, where Appellant and other individuals carried out numerous transactions and worked together to engage in a pattern of racketeering activities, specifically including the purchase and sale of drugs. *See* N.T. Guilty Plea Hr'g, 10/8/19, at 9-12. The record reveals five specific instances of PWID which occurred on: September 10, 2018, September 15, 2018, September 20, 2018, September 21, 2018, and September 26, 2018. *See id.* at 9-14. Indeed, the record reflects that Appellant admitted at his guilty plea hearing that he engaged in the procurement and distribution of heroin, fentanyl, clonazepam, trazadone, and amphetamines on more than five occasions between January and September of 2018. *See id.*. Moreover,

Appellant admitted to conspiring on multiple occasions to buy heroin from Mr. King in Philadelphia with the intent to distribute it, and later conspired with other individuals to sell the heroin in Norristown as part of a pattern of racketeering. *See id.* at 10-13. Additionally, Appellant admitted to engaging in a corrupt enterprise and dealing in the proceeds of this unlawful activity with other individuals and organizing the purchase and sale of controlled substances over the telephone. *See id.* at 9-13.

On this record, we agree with the Commonwealth, and conclude that Appellant's crimes do not merge for sentencing purposes. The record reveals that each of Appellant's crimes were separate criminal undertakings constituting at least ten criminal acts consisting of five separate instances of PWID, two separate conspiracies, and at least one instance of corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication facility. *See* N.T. Guilty Plea Hr'g, 10/8/19, at 9-14. Indeed, Appellant obtained a list of customers from Mr. Bell and took over drug distribution after Mr. Bell was incarcerated, and Appellant admitted he engaged in the purchase of heroin and sold it to more than twenty "customers." *Id.* at 12-14. In sum, on this record, Appellant's crimes stemmed from separate criminal acts that occurred at different times and places, involving different individuals, and did not arise from one criminal act, therefore merger is not applicable. Further, the statutory elements of the offenses for separate instances of PWID, conspiracy, corrupt organizations, dealing in proceeds of unlawful activities, and criminal use of a communication

facility are not included in each other, thereby merger is not appropriate. **See** 42 Pa.C.S. § 9765; **Baldwin**, 985 A.2d at 833, 835; **Williams**, 958 A.2d at 527; **see also Lynch**, 242 A.3d at 348-50; **Cianci**, 130 A.3d at 782.

For these reasons, we conclude that Appellant is due no relief. Accordingly, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed. Jurisdiction relinquished.

*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *8/3/2023*